UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
RITA DAVE,

                Plaintiff,

**MEMORANDUM OF**
**DECISION & ORDER**

         v.                15-CV-3864 (JMA)(GRB)

THE COUNTY OF SUFFOLK, DETECTIVE
INVESTIGATOR LAWRENCE SHEWARK,
Shield No. 308, P.O. "JANE DOE", Individually
and in her Official Capacity, and P.O.s
"JOHN DOE" #1-10, Individually and in their
Official Capacities, (the name "John Doe" being
fictitious, as the true names are presently unknown),

                Defendants.
----------------------------------------------------------------X

**GARY R. BROWN, United States Magistrate Judge:**

      Before the undersigned is an application by plaintiff seeking the unsealing of grand jury minutes relating to the prosecution underlying this civil action, which criminal prosecution was dismissed based upon a finding by a state court judge that the County failed to present sufficient evidence to the grand jury. After plaintiff raised this issue, the undersigned directed plaintiff to seek relief in the state court that had custody of the relevant grand jury minutes. Upon consideration, the state judge returned the matter to the undersigned, suggesting that, following an *in camera* review of the subject transcripts, this Court would be in the best position to make a determination as to the propriety of releasing such minutes in the context of this action.

      In making this application, plaintiff faces a substantial burden of demonstrating a particularized need for the record of the grand jury proceedings. For the reasons set forth herein, she has failed to meet this burden, and the application is DENIED.

**PROCEDURAL HISTORY**

1

This matter was commenced on July 1, 2015 by the filing of a complaint alleging, *inter alia*, claims of malicious prosecution. DE 1. Defendants filed an answer on August 10, 2015. DE 9. On October 7, 2015, the undersigned held an initial conference at which the plaintiff was directed to file an application with the state court for release of the relevant records. *See* Minute Entry dated October 7, 2015. On August 4, 2016, the Honorable Martin I. Efman of the Suffolk County Supreme Court issued a decision and order stating, in relevant part, as follows:

> Under Indictment No. 01029B-2013, defendant Rita Dave was charged with eleven felonies, the most serious charges being seven counts of Grand Larceny in the Second Degree, PL§ 155.40(1). On September 9, 2013, the Court issued an Order denying defendant's motion to reduce or dismiss based upon a review of the Grand Jury minutes. Defendant subsequently filed an omnibus motion. On December 9, 2014, the Court rescinded its previous Order. Pursuant to CPL §210.20(l)(b) and §210.20(4), all counts of this indictment pertaining to this defendant were dismissed with leave to the People to submit the matter to another Grand Jury. The basis for the Court's 2014 decision was that the minutes of the Grand Jury presentation were not legally sufficient to support the indictment.
>
> \*       \*       \*
>
> With respect to defendant's application for release of the Grand Jury Minutes, the People are opposed to the general unsealing and release of the Grand Jury transcripts but consent to the alternative relief of unsealing for the limited purpose of transferring the transcripts to the presiding Justice in the Federal civil action. The Court determines that defendant has not demonstrated a compelling and particularized need for general access to the Grand Jury transcripts and defendant has shown no public interest, *In the Matter of District Attorney of Suffolk County*, 58 N.Y.2d 436 (1983); *People v. DiNapoli*, 27 N.Y.2d 229, 238 (1970); *Albert v. Zahner's Sales Co.*, 51 A.D.2d 541 (2nd Dept. 1976). Although this Court has discretion to disclose the Grand Jury minutes, it determines that the extent to which disclosure of the Grand Jury minutes should be allowed, and the timing of that disclosure, is best determined by the Federal District Court following *in camera* inspection. That Court is in the best position to identify which evidence should be disclosed in the context of the Federal action.

DE 15-1. Following further efforts to resolve this matter without resort to costly motion practice, *see* Minute Order dated Sept. 20, 2016, DE 17; Electronic Order dated October 11,

2016, DE 18, those efforts failed to come to fruition. DE 19. On January 5, 2017, plaintiff filed the instant motion, which was fully briefed on January 27, 2017. DE 28. This opinion follows.

## FACTUAL BACKGROUND

The complaint in this action alleges, in relevant part, as follows:

Plaintiff, Rita Dave, began the practice of law in 1992, ran her own practice as a general practitioner, and received various awards for her *pro bono* efforts. Compl. ¶¶ 13-15, DE 1. As part of her practice, she represented clients in hundreds of real estate transactions. *Id.* at ¶ 18. One such client, Dr. Kamal Zafar, purportedly without Dave's knowledge or involvement, became entangled in a massive mortgage fraud scheme. *Id.* at ¶¶19-53. An investigation into Zafar's activities led to plaintiff's arrest and indictment on eleven criminal counts. *Id.* at ¶¶ 54-57.

Plaintiff further alleges that the relevant investigators, including defendant Shewark, though aware of her purported ignorance of the scheme, misled the District Attorney's Office through false statements and reports and the suppression of exculpatory evidence, into believing that Dave bore culpability in the scheme. *Id.* at ¶¶ 58-63. As part of that recitation, the complaint catalogs matters about which defendants purportedly made misrepresentations to the District Attorney's Office. *Id.* While the complaint makes no specific allegations concerning misstatements before the grand jury, plaintiff alleges more generally that defendants "misrepresented and falsified evidence throughout all phases of the criminal proceedings." *Id.* at ¶ 93; *cf. id.* at ¶ 94 (referencing "the perjurious and fraudulent conduct of defendants"). The complaint further describes the December 9, 2014 dismissal of the indictment on the grounds that the evidence presented to the grand jury was not legally sufficient to support the counts of the indictment charged as against her. *Id.* at ¶¶ 65-70, Attachment A. The state court's order is discussed in further detail below.

Based on these facts, the complaint purports to set forth claims, as relevant herein, for malicious prosecution under 42 U.S.C. §1983 and pursuant to state law.

*The Dismissal Decision*

Justice Efman's decision dismissing the indictment is highly probative to the matters before the Court on this motion. *See generally* DE 25-2. In that decision, Justice Efman described findings predicated upon his *in camera* review of the subject grand jury minutes:

> The Court has examined the minutes of the Grand Jury presentation *in camera* and determines that, with respect to all seven counts against defendant Rita Dave, the evidence is legally insufficient. An indictment may only he obtained if the evidence submitted is legally sufficient to sustain the conviction. CPL §210.20(1)(b); *People v. Mayo*, 36 N.Y.2d 1002 (1975). "'Legally sufficient evidence' means competent evidence which, if accepted as true, would establish every element of an offense charged and the defendant's commission thereof . . .", CPL §70.10(1). In this case, the combined testimonial and documentary evidence submitted to the Grand Jury was not legally sufficient to support the counts of the indictment as against this particular defendant. Although defendant was present at the time of the transactions at issue, such evidence is insufficient to establish guilt, PL §20.00. The related contracts of sale bear typed information identifying defendant as "attorney for sellers." The Court's examination of all of these contracts shows that none of them bear defendant's signature and there was no proof presented that she prepared them, vouched for the veracity of contents or conveyed the fraudulent documents to third parties.
>
> Similarly, the HUD-1 Settlement Statements, the subjects of Counts 30 and 34, are not signed by defendant. Noticeably absent from the Grand Jury presentation is any additional documentary evidence establishing that defendant knowingly acted in concert in the scheme with her co-defendants or that she received any benefit, monetary or otherwise, above and beyond a reasonable closing fee. The remaining testimonial evidence is insufficient to establish the requisite legally sufficient evidence for the charged crimes.

DE 25-2 at 2-3.

Thus, in sum and substance, the state court's decision is predicated upon an absence of evidence in the grand jury record, rather than false or misleading

4

information. Notably, the state court specifically rejected an argument based upon purported *Brady* violations, and expressly dismissed the indictment "with leave to the People to submit the matter to another Grand Jury." *Id*. at 3. In dismissing the charges, the state court did so pursuant to N.Y.C.P.L. § 210.20(1)(b) which provides for dismissal where the "evidence before the grand jury was not legally sufficient to establish the offense charged or any lesser included offense," and exercised its discretion to permit the state to refile pursuant to subsection (4) of that section.

## DISCUSSION

### *The Need for Grand Jury Secrecy*

"Since the 17th century, grand jury proceedings have been closed to the public, and records of such proceedings have been kept from the public eye." *Douglas Oil Co. v. Petrol Stops Northwest,* 441 U.S. 211, 218 n. 9 (1979). "This time-honored policy of secrecy has been the most essential, indeed indispensable, characteristic of grand jury proceedings." *In re Grand Jury Investigation of Cuisinarts, Inc.,* 665 F.2d 24, 28 (2d Cir. 1981); *see also United States v. Procter & Gamble Co.,* 356 U.S. 677, 681 (1958). "The grand jury as a public institution serving the community might suffer if those testifying today knew that the secrecy of their testimony would be lifted tomorrow." *Proctor & Gamble,* 356 U.S. at 682.

The Supreme Court has articulated the principles underlying grand jury secrecy:

> "(1) To prevent the escape of those whose indictment may be contemplated; (2) to insure the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment or their friends from importuning the grand jurors; (3) to prevent subornation of perjury or tampering with the witnesses who may testify before [the] grand jury and later appear at the trial of those indicted by it; (4) to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes; (5) to protect innocent accused who is exonerated from disclosure of the fact that he

5

has been under investigation, and from the expense of standing trial where there was no probability of guilt."

*Douglas Oil Co.,* 441 U.S. at 219 n. 10 (alteration in original) (*quoting Procter & Gamble,* 356 U.S. at 681–82 n. 6)). Similarly, the New York Court of Appeals has identified the following "reasons for maintaining the secrecy or confidentiality of grand jury minutes" as those "most frequently mentioned by courts and commentators":

> (1) prevention of flight by a defendant who is about to be indicted; (2) protection of the grand jurors from interference from those under investigation; (3) prevention of subornation of perjury and tampering with prospective witnesses at the trial to be held as a result of any indictment the grand jury returns; (4) protection of an innocent accused from unfounded accusations if in fact no indictment is returned; and (5) assurance to prospective witnesses that their testimony will be kept secret so that they will be willing to testify freely.

*People v. Di Napoli,* 27 N.Y.2d 229, 235(1970). Several of these factors need not be considered on this application. Where, as here, a grand jury inquiry has concluded, concerns of flight by defendants, tampering with the grand jurors, and obstructing an impending criminal trial are inapposite. There remains, however, the "chilling effect on the ability of future grand juries to obtain witnesses." *Id.* at 236.

In determining that grand jury witnesses – including law enforcement witnesses – are immune from liability under §1983, the Supreme Court reaffirmed its commitment to this historic doctrine:

> "'We consistently have recognized that the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings.' " *United States v. Sells Engineering, Inc.,* 463 U.S. 418, 424, 103 S.Ct. 3133, 77 L.Ed.2d 743 (1983) (*quoting Douglas Oil Co. v. Petrol Stops Northwest,* 441 U.S. 211, 218–219, 99 S.Ct. 1667, 60 L.Ed.2d 156 (1979)). "'[I]f preindictment proceedings were made public, many prospective witnesses would be hesitant to come forward voluntarily, knowing that those against whom they testify would be aware of that testimony. Moreover, witnesses who appeared before the grand jury would be less likely to testify fully and frankly, as they would be open to retribution.' " 463 U.S., at 424, 103 S.Ct.

6

3133.

*Rehberg*, 566 U.S. at 374. Indeed, the critical importance of grand jury secrecy was cited as a primary basis for the Court's determination that grand jury witnesses were entitled to absolute immunity:

> Allowing § 1983 actions against grand jury witnesses would compromise this vital secrecy. If the testimony of witnesses before a grand jury could provide the basis for, or could be used as evidence supporting, a § 1983 claim, the identities of grand jury witnesses could be discovered by filing a § 1983 action and moving for the disclosure of the transcript of grand jury proceedings.

*Id.*

A court called upon to determine whether grand jury transcripts should be disclosed is imbued with wide discretion. *See Douglas Oil Co.,* 441 U.S. at 223; *see also Pittsburgh Plate Glass Co. v. United States,* 360 U.S. 395, 399 (1959). The Second Circuit has explained that this discretion granted to a trial court deciding whether to make grand jury materials public is "one of the broadest and most sensitive exercises of careful judgment that a trial judge can make." *In re Petition of Craig,* 131 F.3d 99, 104 (2d Cir. 1997). The court must carefully weigh the need for disclosure of the grand jury transcript, whether in full or in part, and the public interest in secrecy. In so doing, the court must consider the particular, relevant circumstances of the case. *See Douglas Oil Co.,* 441 U.S. at 223 ("[A]s the considerations justifying secrecy become less relevant, a party asserting a need for grand jury transcripts will have a lesser burden in showing justification."); *In re Craig,* 131 F.3d at 107 (explaining that factors weighing in favor of both secrecy and disclosure must be "evaluated in the context of the specific case by the court to which the petition has been properly brought"). A court that determines that the party seeking disclosure has met its burden of showing that the need for disclosure is greater than the public interest in secrecy may also choose to limit the amount of

7

the grand jury transcript disclosed and/or include protective limitations on the use of the material unsealed. *See Douglas Oil Co.,* 441 U.S. at 222–23; *see also Ruther v. Boyle,* 879 F. Supp. 247, 251 (E.D.N.Y. 1995) ("[I]f disclosure is warranted the material can be subject to an appropriate protective order.").

### *Purported Need to Compel Release of the Grand Jury Minutes*

Having found significant reasons to maintain the confidentiality of the subject grand jury minutes, such confidence "must not be broken except where there is a compelling necessity. There are instances when that need will outweigh the countervailing policy. But they must be shown with particularity." *Procter & Gamble,* 356 U.S. at 682.

As noted, this Court directed plaintiffs to initially make application with the state court for disclosure of the grand jury minutes. When seeking release of state grand jury materials, a party should initially apply to the relevant state court, a practice which serves both comity and practicality. *See Douglas Oil Co.,* 441 U.S. at 224–25 ("Indeed, those who seek grand jury transcripts have little choice other than to file a request with the court that supervised the grand jury, as it is the only court with control over the transcripts"); *Anilao v. Spota,* 918 F. Supp. 2d 157, 170–72 (E.D.N.Y. 2013) (noting that "as a matter of comity, a party seeking disclosure of materials from a state grand jury proceeding for purposes of a federal civil lawsuit should first make its application to the state court supervising the grand jury at issue"). Raising the issue before the state court in which the grand jury was empaneled also helps "to ensure that the important state interest in secrecy is thoroughly considered." *Socialist Workers Party v. Grubisic,* 619 F.2d 641, 644 (7th Cir.1980). In *Douglas Oil,* the Supreme Court directed that, in these circumstances, the state court should make an "evaluation of the need for continued grand jury secrecy and a determination that the limited evidence before it showed that disclosure

8

might be appropriate, [and then] send the requested materials to the courts where the civil case[] [is] pending." 441 U.S. at 230.

Following a state court's determination to unseal grand jury minutes to permit *in camera* review in connection with ancillary civil proceedings, "this Court is imbued with the power to make an independent determination of whether the Grand Jury materials requested should be released and, if so, the degree to which and the manner by which they should be disclosed." *Anilao,* 918 F. Supp. 2d at 172. "Although this Court is not bound by state law protecting the secrecy of state grand jury proceedings, a strong policy of comity between state and federal sovereignties impels federal courts to recognize state privileges where this can be accomplished at no substantial cost to federal substantive and procedural policy." *Cherry v. Rodenburg,* No. 04-CV-1902 (JMA), 2008 WL 4610302, at *2 (E.D.N.Y. Oct. 15, 2008) (internal quotation marks omitted); *see also Anilao,* 918 F. Supp. 2d at 171; *Wilson v. City of New York,* No. 06-CV-229 (ARR) (VVP), 2007 WL 4565138, at *1 (E.D.N.Y. Dec. 21, 2007).

It is beyond dispute that, due in large part to the absolute immunity established in *Rehberg v. Paulk*, the only claim to which the grand jury minutes may be relevant is plaintiff's claim for malicious prosecution. *See* DE 24 at 6; *cf. Maldonado v. City of New York*, No. 11 Civ. 3514 (PKC) (HBP), 2012 WL 2359836, at *5 (S.D.N.Y. June 21, 2012) ("following *Rehberg*, there is no federal interest in the grand jury minutes because they cannot be used as a predicate for a Section 1983 malicious prosecution claim. Thus, no concern is present that state rules may 'frustrate the important federal interests . . . in vindicating important federal substantive policy such as that embodied in section 1983'"). Where, then, as here, "because the grand jury minutes can only be used to advance a malicious prosecution claim under state law, the applicability of the doctrine of grand jury secrecy is governed by state law." *Maldonado*, 2012 WL 2359836, at *4–5 (*citing Lego v. Stratos Lightwave, Inc.*, 224 F.R.D. 576, 578

9

(S.D.N.Y. 2004)). In evaluating whether to release grand jury minutes in the context of a malicious prosecution action, the New York Court of Appeals has ruled:

> in cases in which the grand jury has returned an indictment, there is a presumption of probable cause, and the plaintiff can therefore only succeed on a malicious prosecution claim if he can prove that the indictment was procured by fraud, perjury, suppression of evidence, or other bad-faith conduct.

*Grucci v Grucci*, 20 N.Y.3d 893, 898 (2012) (*quoting Colon v. City of New York*, 60 N.Y.2d 78, 82–83 (1983)). The question in this action turns, not on "fraud, perjury, suppression of evidence, or other bad-faith conduct," but rather the absence of relevant, incriminating evidence. In examining, in a slightly different context, the question of the failure to supply evidence to a grand jury, one court observed that "failure to provide the grand jury with that evidence is not indicative of any bad faith intent," and, as a result, concluded that the plaintiff in that case "has not demonstrated that the grand jury minutes would afford him any evidence that would assist him in proving a claim of malicious prosecution, and therefore has failed to demonstrate a particularized need for unsealing the minutes." *Alvarado v. City of New York*, No. CV 04-2558 (NGG) (VVP), 2006 WL 2252511, at *5 (E.D.N.Y. Aug. 5, 2006).

This is, in some ways, an unusual case. Usually, in attempting to articulate a basis for the release of confidential grand jury minutes, plaintiffs' counsel labors in the dark. As this Court has previously observed:

> [P]laintiffs must provide a specific basis for disclosure of specific, targeted material. I recognize, of course, that plaintiffs' counsel faces a difficult challenge in this regard. A party that is unaware of the contents of a grand jury proceeding may not be in a position to identify portions of that record that should be subject to discovery, a principle acknowledged in this Court's discovery rules. *See, e.g.,* Local Civil Rule 26.4 ("Discovery requests shall be read reasonably in the recognition that the attorney serving them generally does not have the information being sought and the attorney receiving them generally does have such information").

*Gonzalez v. County of Suffolk,* No. CV 09-1023 (TCP) (GRB), 2014 WL 1669134, at *8 (E.D.N.Y. Apr. 23, 2014). The instant action is materially different.

Due in large part to the detailed, articulate decision of Justice Efman, plaintiff has great insight into the content of the grand jury record. Based solely on the excerpt from that opinion reproduced above, it is clear that the grand jury record contains evidence demonstrating that plaintiff was present during the fraudulent transactions at issue, but insufficient information to establish plaintiff's guilt. DE 25-2. In his decision, Judge Efman examined all of the contracts, which exhibits included home sale contracts bearing typewritten indicia that plaintiff served as counsel to sellers and HUD-1 Settlement Statements, but found that none of the contracts, notably, included her signature. *Id.* Furthermore, Justice Efman found that there was no evidence in the records that the defendant prepared these documents, sent them to third parties or otherwise endorsed or adopted their contents. *Id.* Similarly, the record included the HUD-1 Settlement Statements which the plaintiff did not sign. *Id.* at 3. Justice Efman documented the absence of "any additional documentary evidence establishing that defendant knowingly acted in concert in the scheme with her co-defendants or that she received any benefit, monetary or otherwise, above and beyond a reasonable closing fee." *Id.* Finally, in rejecting plaintiff's contentions concerning purported violation of the prosecutions *Brady* obligations, Justice Efman noted that he had "scrupulously" examined the record and found "no evidence" supporting claims of prosecutorial misconduct. *Id.*

After release of the minutes to the undersigned by Justice Efman, this Court conducted an independent, detailed *in camera* review, and counsel provided additional authorities. *See Anilao,* 918 F. Supp. 2d at 182 ("*In camera* review of grand jury materials 'allows an even more refined assessment of the delicate balance between justice and secrecy and thus a more accurately calibrated determination of whether the plaintiff states a 'particularized need' under

*Douglas Oil.*") (*citing Frederick v. New York City,* No. 11 Civ. 469 (JPO), 2012 WL 4947806, at * 14 (S.D.N.Y. Oct. 11,2012)). Based on that review, this Court comes to nearly identical conclusions concerning the grand jury minutes. Despite their heft, the amount of evidence bearing on plaintiff can only be characterized as negligible. And to the extent that plaintiff here suggests that the prosecutor's instructions to the grand jury were, in some manner, misleading or inappropriate, such allegations are entirely unsupported by the record. If anything, the prosecutor's instructions are remarkable only insofar as they are unremarkable.

Thus, in considering whether to release grand jury minutes, the Court must consider "whether there are sufficient alternative means of shedding light on the proceedings." *Anilao*, 918 F. Supp. 2d at 178. Here, the *in camera* review by Justice Efman, as well as the independent review conducted by this Court provide some insight into the process. And, importantly, this Court's review, as well as that by Justice Efman, suggest that the grand jury presentation was characterized by a lack of evidence, rather than the false evidence claimed by plaintiff.

In some ways, plaintiff's assertions concerning the absence of evidence appear to suggest a theory of negligence in the investigation and prosecution of plaintiff. *See, e.g*. DE 24 at 8 (complaining that defendants "subjected [plaintiff] to an utterly baseless criminal prosecution"). However, "there is no cause of action under New York law sounding in negligent prosecution." *Bennett v. Brooklyn Criminal Court*, No. 16-CV-5111 (CBA) (LB), 2016 WL 7494862, at *3 (E.D.N.Y. Dec. 29, 2016) (*citing Coleman v. Corp. Loss Prevention Assoc., Inc*., 724 N.Y.S.2d 321, 322 (2d Dep't 2001) ("There is no cause of action in the State of New York sounding in negligent prosecution or investigation.")); *see Antonious v. Muhammad*, 673 N.Y.S.2d 158, 159 (2d Dep't 1998) (same).

Counsel also asserts that production of the grand jury minutes are "necessary" to impeach and/or refresh the recollection of witnesses. However, as the undersigned has previously observed:

> In many instances, plaintiffs argue that the grand jury investigation will be "helpful" to their case, such as in "evaluating testimony." See, e.g., Mot. 4. Such arguments are inapposite, as they fail to meet the exacting standards set forth in relevant cases, which require a more particularized showing to overcome the needs for secrecy. Lucas v. Turner, 725 F.2d 1095, 1103–06 (7th Cir.1984) (denying disclosure based on assertion that "grand jury testimony may help" locate witnesses in absence of showing that plaintiffs "exhausted all other usual means used in attempting to locate desired witnesses").

*Gonzalez,* 2014 WL 1669134, at *6; *Ruggiero v. Fahey*, 478 N.Y.S.2d 337, 341 (2d Dep't 1984) (while "Grand Jury testimony may properly be used to impeach witnesses and to refresh their recollections, if necessary[,] the strong presumption of confidentiality of Grand Jury proceedings is not overcome by conclusory statements that the Grand Jury testimony is needed for the above purposes or to adequately prepare for trial").

Therefore, neither plaintiff's arguments nor this Court's *in camera* review provides a particularized ground to overcome the presumption of secrecy. This conclusion is further supported by the thoughtful determination of Justice Efman in which he concluded that plaintiff "has not demonstrated a compelling and particularized need for general access to the Grand Jury

transcripts and [ ] shown no public interest." DE 15-1. As such, plaintiff has failed to make the appropriate showing, and release of the grand jury minutes is not appropriate.

## CONCLUSION

For the foregoing reasons, plaintiff's application for release of grand jury minutes is DENIED.

Dated: Central Islip, New York
June 2, 2017

/s/ Gary R. Brown
GARY R. BROWN
United States Magistrate Judge