DAVID B. SHANIES LAW OFFICE
David B. Shanies
Joel A. Wertheimer
Deborah I. Francois
411 Lafayette Street, Sixth Floor
New York, New York 10003
(212) 951-1710 (Tel)
(212) 951-1350 (Fax)
*david@shanieslaw.com*
*joel@shanieslaw.com*
*deborah@shanieslaw.com*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

RITA DAVE,

                    Plaintiff,

   — against —

THE COUNTY OF SUFFOLK, DETECTIVE
INVESTIGATOR LAWRENCE SHEWARK, P.O.
JANE DOE, and P.O.S JOHN DOE #1-10,

                  Defendants.

---

Case No. 15-CV-3864 (JMA) (ST)

 

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR SANCTIONS
<u>AND RELATED RELIEF AGAINST DEFENDANT LAWRENCE SHEWARK</u>**

# TABLE OF CONTENTS

Preliminary Statement ................................................................................................. 1

Statement of Facts ...................................................................................................... 1

Legal Standard ........................................................................................................... 6

Argument ................................................................................................................... 8

I.    Defendant Shewark's Discovery Misconduct Warrants Rule 37 Sanctions ................................. 8

    A.   Defendant Shewark Failed to Disclose Relevant Evidence ................................. 8

    B.   Defendant Shewark Violated the Court's Order ................................................. 11

    C.   Defendant Shewark Spoliated Relevant Evidence ............................................. 12

II.   Defendant Shewark's False Declaration Merits Rule 11 Sanctions ............................................. 14

    A.   Plaintiff Satisfied Rule 11's Procedural Requirements ....................................... 15

    B.   Defendant Shewark's False Declaration Was Objectively Unreasonable .......................... 15

III.  Sanctions Under the Court's Inherent Powers Are Appropriate for Defendant Shewark's Discovery Misconduct and False Representations ........................................................ 16

    A.   Defendant Shewark's Actions Were Unjustified ............................................. 16

    B.   Defendant Shewark's Actions Were in Bad Faith and for Improper Purposes .................. 17

IV.  Plaintiff Is Entitled to Various Forms of Relief ........................................................... 18

    A.   Additional Discovery and Monetary Sanctions Are Appropriate Under Rule 37(b) and (c) ................................................................................................ 19

    B.   An Adverse Inference Instruction Regarding Any Spoliated Metadata Is Warranted Under Rule 37(e) ................................................................................ 21

    C.   The Relief Sought Are Also Warranted Under Rule 11 and the Court's Inherent Power ... 23

V.   Defendant Shewark's Misconduct Should Be Referred to the U.S. Attorney's Office for Investigation ................................................................................................ 24

Conclusion ................................................................................................................. 25

i

# TABLE OF AUTHORITIES

**Cases**

*A.V. by Versace, Inc. v. Gianni Versace S.p.A.*, 446 F. Supp. 2d 252 (S.D.N.Y. 2006) ...................... 25

*Abbott Labs. v. Adelphia Supply USA*, No. 15 CV 5826 (CBA) (LB), 2019 U.S. Dist. LEXIS 75364 (E.D.N.Y. May 2, 2019) ....................................................................................................... 17, 18

*Abbott Labs. v. Adelphia Supply USA*, No. 15 CV 5826 (CBA) (LB), 2020 U.S. Dist. LEXIS 50928 (E.D.N.Y. Mar. 24, 2020) ...................................................................................................... 17

*Ades v. 57th St. Laser Cosmetica, LLC*, No. 11 Civ. 8800 (KNF), 2013 U.S. Dist. LEXIS 79864 (S.D.N.Y. June 6, 2013) ...................................................................................................... 25

*Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240 (1975) ................................................. 7

*Auscape Int'l v. Nat'l Geographic Soc'y*, No. 02 Civ. 6441 (LAK), 2003 U.S. Dist. LEXIS 561 (S.D.N.Y. Jan. 17, 2003) ....................................................................................................... 11

*Calloway v. Marvel Entm't Grp.*, 854 F.2d 1452 (2d Cir. 1988) ......................................................... 6

*Cat3, LLC v. Black Lineage, Inc.*, 164 F. Supp. 3d 488 (S.D.N.Y. 2016) ......................... 8, 17, 23, 24

*Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991) ................................................................................. 7, 8

*Cruz v. G-Star Inc.*, No. 17-CV-7685 (PGG) (OTW), 2019 U.S. Dist. LEXIS 102686 (S.D.N.Y. June 19, 2019) ............................................................................................................................. 13, 14, 22

*Daval Steel Prods., Div. of Francosteel Corp. v. M/V Fakredine*, 951 F.2d 1357 (2d Cir. 1991) ...... 21

*Design Strategy, Inc. v. Davis*, 469 F.3d 284 (2d Cir. 2006) ........................................................ 10, 19

*Dugan v. United States*, No. 11-cv-3973 (SLT), 2015 U.S. Dist. LEXIS 119041 (E.D.N.Y. Sept. 3, 2015) .................................................................................................................................... 25

*Greene v. Bryan*, No. 15-cv-249 (ARR) (RER), 2019 U.S. Dist. LEXIS 6670 (E.D.N.Y. Jan. 14, 2019) .............................................................................................................................. 7, 12, 13

*Hsueh v. N.Y. State Dep't of Fin. Servs.*, No. 15 Civ. 3401 (PAC), 2017 U.S. Dist. LEXIS 49568 (S.D.N.Y. Mar. 31, 2017) ................................................................................................... 24

*Kosher Sports, Inc. v. Queens Ballpark Co.*, LLC, No. 10-CV-2618 (JBW), 2011 U.S. Dist. LEXIS 86651 (E.D.N.Y. Aug. 5, 2011) .......................................................................................... 20

*Kronisch v. United States*, 150 F.3d 112 (2d Cir. 1998) .................................................................... 13

*Lodge v. United Homes, LLC*, 787 F. Supp. 2d 247 (E.D.N.Y. 2011) .......................................... 10, 20

*MacDraw, Inc. v. CIT Grp. Equip. Fin., Inc.*, 73 F.3d 1253 (2d Cir. 1996) ....................................... 16

*Margo v. Weiss*, 213 F.3d 55 (2d Cir. 2000) ....................................................................................16

*Margo v. Weiss*, No. 96 Civ. 3842 (MBM), 1998 U.S. Dist. LEXIS 17258 (S.D.N.Y. Oct. 28, 1998) ..........................................................................................................................................16, 20, 24

*Markey v. Lapolla Indus.*, No. CV 12-4622 (JS) (AKT), 2015 U.S. Dist. LEXIS 112915 (E.D.N.Y. Aug. 25, 2015) ....................................................................................................................*passim*

*Markey v. Lapolla Indus.*, No. CV 12-4622 (JS) (AKT), 2016 U.S. Dist. LEXIS 8851 (E.D.N.Y. Jan. 26, 2016) ..........................................................................................................................................7

*Milani v. IBM Corp.*, No. 02 Civ. 3346 (MBM), 2004 U.S. Dist. LEXIS 28674 (S.D.N.Y. Dec. 30, 2004) ........................................................................................................................................16

*Nike, Inc. v. Top Brand Co.*, 216 F.R.D. 259 (S.D.N.Y. 2003) ..........................................................12

*O'Neil v. Ret. Plan for Salaried Emps. of RKO Gen., Inc.*, No. 88 Civ. 8498 (JSM), 1992 U.S. Dist. LEXIS 237 (S.D.N.Y. Jan. 7, 1992) ................................................................................................24

*Offor v. Mercy Med. Ctr.*, 698 F. App'x. 11 (2d Cir. 2017) ................................................................7

*Offor v. Mercy Med. Ctr.*, No. 15-cv-2219 (ADS)(SIL), 2016 U.S. Dist. LEXIS 83049 (E.D.N.Y. June 25, 2016) ....................................................................................................................................7

*Oliveri v. Thompson*, 803 F.2d 1265 (2d Cir. 1986) ..........................................................................16

*Ottoson v. SMBC Leasing & Fin., Inc.*, 268 F. Supp. 3d 570 (S.D.N.Y. 2017) ..................................22

*Pavelic & LeFlore v. Marvel Entm't Grp.*, 493 U.S. 120 (1989) ..........................................................7

*Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, No. 05 Civ. 9016 (SAS), 2010 U.S. Dist. LEXIS 4546 (S.D.N.Y. Jan. 15, 2010) ................................................20, 23

*Pfizer, Inc. v. Y2K Shipping & Trading, Inc.*, No. 00 CV 5304 (SJ), 2004 U.S. Dist. LEXIS 10426 (E.D.N.Y. Mar. 26, 2004) ..............................................................................................................15

*Quinby v. WestLB AG*, No. 04 Civ. 7406 (WHP) (HBP), 2005 U.S. Dist. LEXIS 35583 (S.D.N.Y. Dec. 15, 2005) ..............................................................................................................................12

*R.F.M.A.S., Inc. v. So*, 271 F.R.D. 13 (S.D.N.Y. 2010) ....................................................................10

*R.F.M.A.S., Inc. v. So*, 271 F.R.D. 55 (S.D.N.Y. 2010) ....................................................................10

*Resnik v. Coulson*, No. 17-CV-676 (PKC) (SMG), 2019 U.S. Dist. LEXIS 92159 (E.D.N.Y. Jan. 4, 2019) ..................................................................................................................................13, 22

*Revson v. Cinque & Cinque*, P.C., 221 F.3d 71 (2d Cir. 2000) ............................................................7

*Riley v. City of New York*, No. 10-CV-2513(MKB), 2015 U.S. Dist. LEXIS 16025 (E.D.N.Y. Feb. 10, 2015) ..........................................................................................................................................23

*Salovaara v. Eckert*, 222 F.3d 19 (2d Cir. 2000) ................................................................... 6

*Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323 (2d Cir. 1999) ................................... 16, 17

*SEC v. Smith*, 710 F.3d 87 (2d Cir. 2013) ................................................................... 16, 17

*Sekisui Am. Corp. v. Hart*, 945 F. Supp. 2d 494 (S.D.N.Y. 2013) ........................................ 23

*Sibley v. Choice Hotels Int'l, Inc.*, No. CV 14-634 (JS) (AYS), 2016 U.S. Dist. LEXIS 29154 (E.D.N.Y. Mar. 7, 2016) ................................................................................... 7

*Stair v. Calhoun*, No. 12-CV-6121 (SIL), 2016 U.S. Dist. LEXIS 126565 (E.D.N.Y. Sept. 16, 2016) ................................................................................................. 23

*Star Mark Mgmt. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 682 F.3d 170 (2d Cir. 2012) . 7, 15

*TVT Records, Inc. v. Island Def Jam Music Grp.*, No. 02 Civ. 6644 (VM) (DF), 2006 U.S. Dist. LEXIS 62230 (S.D.N.Y. May 15, 2006) ................................................................... 14

*United States v. Cornielle*, 171 F.3d 748 (2d Cir. 1999) ..................................................... 24

*United States v. Mandujano*, 425 U.S. 564 (1976) .......................................................... 24

*Valentini v. Citigroup, Inc.*, No. 11 Civ. 1355 (JMF), 2013 U.S. Dist. LEXIS 116473 (S.D.N.Y. Aug. 16, 2013) ..................................................................................... 10, 21

*West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776 (2d Cir. 1999) ..................................... 12

*Wolters Kluwer Fin. Servs. v. Scivantage*, 564 F.3d 110 (2d Cir. 2009) ............................... 17

*World Wide Polymers, Inc. v. Shinkong Synthetic Fibers Corp.*, 694 F.3d 155 (2d Cir. 2012) .......... 19

**Statutes**

18 U.S.C. § 1621 ................................................................................................. 25

**Rules**

Fed. R. Civ. P. 11 ............................................................................ 6, 14, 15, 16

Fed. R. Civ. P. 26 ................................................................................................. 9

Fed. R. Civ. P. 37 ............................................................................................. *passim*

**PRELIMINARY STATEMENT**

The parties have spent the better part of this year litigating the issues surrounding

Defendant Lawrence Shewark's apparent efforts to tamper with Plaintiff's expert witness, retired

New York State Police Senior Investigator David Douglas, and his related deletion of text messages

he exchanged with non-party Ernesto Pizarro, also a retired State Police investigator.  At every turn,

Defendant Shewark has impeded discovery into these issues, vehemently insisting – contrary to

Plaintiff's belief, based on the evidence – that the text messages he deleted did not relate to Mr.

Douglas.  Finally, when backed into a corner by the Court's direct inquiry, and believing at the time

that his word could not be disproven, Defendant Shewark agreed to provide a sworn declaration

stating unequivocally that Mr. Douglas was not the subject of his deleted text messages with Mr.

Pizarro.  Newly obtained evidence demonstrates that Defendant Shewark's declaration was false; in

fact, Defendant Shewark deleted from his phone a text message he sent to Mr. Pizarro in August

2018, discussing that Mr. Douglas had "switched teams" to serve as an expert for Plaintiff in this

case because he would do "anything" for money.  Perjury, particularly by an active and sworn law

enforcement officer, merits severe sanctions under Federal Rules of Civil Procedure 11 and 37 and

the Court's inherent power, to: (1) compensate Plaintiff for the costs and fees incurred and prejudice

suffered as a result of Defendant Shewark's discovery violations and false representations, (2) punish

Defendant Shewark for such misconduct, and (3) deter future violations by him and others.  In

addition, Plaintiff asks that the Court exercise its discretion to refer this matter to the U.S. Attorney

for the Eastern District of New York for investigation and, if warranted, prosecution.

**STATEMENT OF FACTS**

The factual background underlying this motion has been set forth in prior

submissions – including Plaintiff's motion to compel Defendant Shewark, (Docket Entry ("DE") 73),

reply in support of such motion, (DE 76), and letter to the Court dated August 31, 2020, (DE 78),

which Plaintiff incorporates by reference – and Plaintiff will summarize the relevant history here.  In

the summer of 2018, around the time that Plaintiff's current counsel entered the case and prior to the

parties' engagement in settlement discussions before the Honorable Gary R. Brown, Plaintiff's counsel became aware of non-party contacts with both of the potential experts in financial crimes investigations that Plaintiff had identified to Defendants. (*See* Ex. 1 (Decl. of David S. Douglas) at 1.)  As relevant here, Mr. Douglas, a retired Senior Investigator for the New York State Police ("NYSP"), reported being contacted by a former NYSP colleague, who told him that Mr. Pizarro, another retired State Trooper, wanted to speak to Mr. Douglas about his involvement in this case. (*See id.*)  The men's mutual colleague told Mr. Douglas that Mr. Pizarro asked whether Mr. Douglas knew he was "going against" a fellow Trooper (*i.e.*, Defendant Shewark).  (*Id.*)  Mr. Douglas understood the communication as an effort to discourage him from participating in this case, where he would be adverse to Defendant Shewark, another former Trooper.  (*Id.* at 2.)

Soon after Plaintiff's counsel learned this information, Mr. Douglas executed a declaration to memorialize the communications.  Suspecting that Defendant Shewark instigated the improper communications, Plaintiff's counsel raised the issue before Judge Brown.  At the time, Judge Brown was exploring the possibility of settlement with the parties.  In February 2019, when it became apparent that no settlement was possible, Plaintiff asked the Court to reopen fact discovery for the limited purpose of exploring the potential efforts at witness tampering ("Witness Tampering Discovery").  (Ex. 2 (Sett. Conf. Tr.) at 9:17-11:9.)

In March 2019, Plaintiff propounded discovery requests to Defendant Shewark, demanding, *inter alia*, "[a]ll Documents constituting or concerning communications with any person from or to Lawrence Shewark concerning Rita Dave, Ernesto Pizarro, . . . and/or David Douglas, including, but not limited to . . . text messages."  (Ex. 3 (Pl. Suppl. Interrogs. and Doc. Reqs.) at 5.)  The scope of those requests overlapped with requests Plaintiff had served in July 2017 during the original fact discovery period, which demanded "all documents prepared by Defendant Shewark relating to Ms. Dave."  (Ex. 4 (Pl. Orig. Interrogs.) at 5; *see also* Ex. 5 (Pl. Orig. Doc. Reqs.) at 4 (requesting "[a]ll documents identified in the accompanying interrogatories").)

Despite the fact that the text messages he exchanged with Mr. Pizarro were responsive to both Plaintiff's original discovery demands and her considerably more pointed Witness Tampering Discovery demands, Defendant Shewark did not disclose to Plaintiff that he had exchanged and subsequently deleted text messages with Mr. Pizarro about this case.  (*See* Ex. 6 (Def. Resps.).)  Rather, Defendant Shewark produced heavily redacted cell phone records reflecting only three phone calls with Mr. Pizarro in July and August 2018 and a text message exchanged with non-party Michael McAdorey in March 2019.  (*See id*. at 10-12.)  The records did not reflect any text messages with Mr. Pizarro, and nowhere in his responses did Defendant Shewark state that the records were incomplete in any way.

Similarly, in his sworn responses to Plaintiff's interrogatories, Defendant Shewark represented that he communicated with Mr. Pizarro "*via his cell phone* . . . in July and August of 2018.*"  (*Id.* at 4 (emphasis added).)  Defendant Shewark did not disclose that his communications with Mr. Pizarro included text messages; however, he did disclose text message communications with a different non-party, stating that he "received an incoming text message from [non-party] Michael McAdorey."  (*Id*.)

Plaintiff did not learn of the text message exchange between Defendant Shewark and Mr. Pizarro until the latter's response to a Rule 45 subpoena.  (*See* Ex. 7 (Pizarro Resps.).)  In July 2019, Plaintiff subpoenaed Defendant Shewark's phone records directly from his cell phone service provider, but in August 2019, Defendant Shewark's attorneys objected, insisting that the phone providers produce the records directly to his attorneys, who would then decide what materials would be produced to Plaintiff.  (*See* DE 46.)  Defendant Shewark did not provide any information about the cell phone records until November 2019, when his attorneys still produced no records but instead provided Plaintiff with an Excel spreadsheet reflecting three phone calls between Defendant Shewark and Mr. Pizarro on July 11, 2018, one phone call from Defendant Shewark to Mr. Pizarro on August 9, 2018, and two text messages between Defendant Shewark and Mr. Pizarro the following day.  (Ex. 8 (Emails dated Oct. 2019 to Apr. 2020) at 4-5; Ex. 9 (Phone Records Info.).)

In the months that followed, Defendant Shewark engaged in numerous obstructive tactics to further frustrate the Witness Tampering Discovery.  He ignored Plaintiff's request in immediate response to the November 2019 disclosure for the text messages reflected in the spreadsheet and her demand that Defendant Shewark preserve all mobile devices and data involved in communications with Mr. Pizarro.  (*See* Ex. 8 (Emails dated Oct. 2019 to Apr. 2020) at 4.)  He ignored an additional request, months later, again asking that the phone be preserved and noting that continued use of the phone risked altering or destroying the data on it.  (*See* Ex. 10 (Pl.'s Letter dated Apr. 20, 2020) at 2-3.)  He did not amend his interrogatory responses – and to this day he still has not done so – to disclose that he exchanged and subsequently deleted text messages with Mr. Pizarro.  Moreover, at some point, Defendant Shewark deleted the messages from his phone (to date, he still has not disclosed when he did so) and then continued to use the device, which likely caused otherwise recoverable deleted data to be overwritten.[1]  For unknown reasons, Defendant Shewark's lawyers did not even speak to Defendant Shewark about what items and data he possessed until at least April 10, 2020.  (*See* Ex. 8 (Emails dated Oct. 2019 to Apr. 2020) at 1 ("As I mentioned, I have not spoken with the detective so I can't even tell you what he has.  If you'd like, I could ask him.").)

After numerous "meet-and-confer" communications, and after Defendant Shewark refused to make his phone available for an independent forensic examination to attempt recovery of the messages and/or related metadata, Plaintiff moved for an order compelling Defendant Shewark to

---

1.  Although data deleted from a cell phone can still be recovered through the use of mobile device forensics, deleted data that is subsequently overwritten is not recoverable.  Because any use of a cell phone has the potential to overwrite or otherwise disturb data and metadata on the device, responsible practices for handling electronically stored information dictate that a cell phone containing potentially discoverable information not be used – or even connected to the internet – until a proper forensic image can be created.  *See, e.g.*, Revelation Cellular Forensics, *Cell Phone Evidence Preservation & Spoliation, Wear Leveling & Garbage Collection* (Mar. 4, 2019) (*available at* http://bit.ly/revforensics) ("If the user continues to use a target phone, a significant amount of data, potentially evidence, can be lost without the user intentionally deleting the data."); Maragell Corporate Investigations, *Data Spoliation – Uncovering the Cover-Up* (Dec. 11, 2018) (*available at* http://bit.ly/maragell) ("Until [deleted] data is overwritten, keyword searches and forensic file recovery software can be used to locate and/or reclaim the information."); *see also* JDSupra, *Apple iPhone Forensics: An Update from the Trenches* (May 15, 2020) (*available at* http://bit.ly/jdsupra1) ("When information is deleted from an Apple iPhone device, data is stored within the free space of the device or the structure of a database file (mainly SQLite format) and can potentially be overwritten with new information coming onto the phone. Unfortunately, overwritten data is unrecoverable.").

do so.  (*See* DE 73.)  Defendant Shewark vigorously opposed the motion, characterizing it as a

"pretext[] . . . to harass [him] and subject him to vexatious and oppressive litigation."  (DE 75 at 1.)

The centerpiece of Defendant Shewark's argument was that the messages were irrelevant because

they did not pertain in any way to Mr. Douglas.  At the hearing on the motion, defense counsel

insisted:

> I think it's important to highlight one significant fact:  ***The text messages that are the
> subject of this motion do not concern Douglas.***  In case that was not made clear in
> the papers, I'm going to make it clear for the record now.  ***There was no messaging
> concerning Detective Douglas.  The plaintiff's application is premised on that
> supposition and assumption, and it's false.***

(Ex. 11 (Hrg Tr.) at 3:17-24 (emphasis added).).  When the Court asked defense counsel whether

Defendant Shewark "would be prepared to submit an affidavit stating that the text messages do not

relate to Douglas," counsel responded, "Absolutely, absolutely."  (*Id.* at 6:4-7.)  Citing as a factor

"the fact that defendant is willing to  . . . issue a sworn statement to the effect that the text messages

weren't about the witnesses," (*id.* at 22:3-9), the Court denied Plaintiff's motion.  However, the

Court ordered Defendant Shewark "to provide a sworn affidavit regarding the content of the missing

text messages."  (Minute Entry dated July 9, 2020.)

Following the hearing, Defendant Shewark provided Plaintiff with a sworn

declaration, stating, in pertinent part:

> 3.      I understand that, in denying plaintiff's application, the Court directed that I
> furnish a sworn statement to plaintiff on ***the limited issue of whether the text
> messages concerned plaintiff's expert, David Douglas.***
>
> 4.      ***The text messages that are the subject of plaintiff's application neither
> concerned plaintiff's expert witness, David Douglas, nor the subject litigation.***
>
> ***I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing
> is true and correct.***

(Ex. 12 (Decl. of Lawrence Shewark ("Shewark Decl.")) (emphasis added).)

Newly discovered information demonstrates that Defendant Shewark's declaration is

perjurious.  Specifically, after obtaining Mr. Pizarro's consent to a forensic examination of his own

phone, Plaintiff engaged Vestige Digital Investigations ("Vestige"), a national and international

provider of digital forensics, cybersecurity, and e-discovery services, to forensically image and search the device.  Vestige was able to recover the two messages that Defendant Shewark exchanged with Mr. Pizarro on August 10, 2018.  (*See* Ex. 13 (Pizarro Forensic Analysis).)  Defendant Shewark's message to Mr. Pizarro did indeed concern Mr. Douglas, stating, "10-4[.]  Douglas switched teams . . . some guys anything for $&$$."  (*Id.*)

Plaintiff shared the results of this analysis with Defendant Shewark, and the parties met and conferred on September 1, 2020.  Defense counsel did not dispute that the message was authentic, relevant, and should have been produced.  On September 4, 2020, Plaintiff served a Rule 11 "safe harbor" letter on Defendant Shewark concerning the false declaration.  (Ex. 14 (Rule 11 Safe Harbor Ltr.).)  At no time during the "safe harbor" period, or any time thereafter, did Defendant Shewark withdraw or correct his false declaration.  Nor has Defendant Shewark updated his discovery responses to reflect the deleted text messages, including his sworn interrogatory responses, which fail to disclose the messages.

## LEGAL STANDARD

Plaintiff moves for sanctions against Defendant Shewark under three different sources of the Court's authority: (1) Rule 11, (2) Rule 37, and (3) the Court's inherent powers.

Rule 11 provides, in relevant part, that by presenting a paper to the court, "whether by signing, filing, submitting, or later advocating it," an attorney or party certifies that:

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; [and]
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b).  Under the Rule, "a court [may] impose sanctions upon attorneys, law firms, or parties for making or causing to be made certain improper representations to the court."  *Salovaara v. Eckert*, 222 F.3d 19, 32 (2d Cir. 2000); *see also* Fed. R. Civ. P. 11(c).  Represented parties may be sanctioned under the Rule.  *See Calloway v. Marvel Entm't Grp.*, 854 F.2d 1452, 1474-75 (2d Cir. 1988), *rev'd in part on other grounds sub nom*, *Pavelic & LeFlore v. Marvel Entm't Grp.*, 493 U.S.

120 (1989).  "[S]anctions under Rule 11 do not require a finding of bad faith." *Offor v. Mercy Med.*

*Ctr.*, No. 15-cv-2219 (ADS)(SIL), 2016 U.S. Dist. LEXIS 83049, at *6 (E.D.N.Y. June 25, 2016),

*aff'd*, 698 F. App'x. 11 (2d Cir. 2017).  Rather, the standard for triggering sanctions under Rule 11

"is objective unreasonableness and is not based on the subjective beliefs of the person making the

statement." *Star Mark Mgmt. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd*., 682 F.3d 170, 177

(2d Cir. 2012) (citation omitted).

      Rule 37 provides for sanctions on parties and/or attorneys for discovery misconduct.

Under Rule 37(b), a court is authorized to impose sanctions upon a party for "failure to obey a

discovery order." *Sibley v. Choice Hotels Int'l, Inc*., No. CV 14-634 (JS) (AYS), 2016 U.S. Dist.

LEXIS 29154, at *6 (E.D.N.Y. Mar. 7, 2016).  Rule 37(c), in turn, allows a court to impose sanctions

"in the event of [a] party's failure to disclose, to supplement an earlier response, or to admit as

required by Rule 26(a) or (e), 'unless the failure was substantially justified or is harmless.'" *Markey*

*v. Lapolla Indus*., No. CV 12-4622 (JS) (AKT), 2015 U.S. Dist. LEXIS 112915, at *46 (E.D.N.Y.

Aug. 25, 2015), *report and recommendation adopted*, 2016 U.S. Dist. LEXIS 8851 (E.D.N.Y. Jan.

26, 2016) (quoting Fed. R. Civ. P. 37(c)(1)).  Meanwhile, under Rule 37(e), "a court may issue

sanctions if 'electronically stored information that should have been preserved in the anticipation or

conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot

be restored or replaced through additional discovery.'" *Greene v. Bryan*, No. 15-cv-249 (ARR)

(RER), 2019 U.S. Dist. LEXIS 6670, *9 (E.D.N.Y. Jan. 14, 2019) (quoting Fed. R. Civ. P. 37(e)).

      Finally, under its inherent powers, a court may sanction any attorney or party who

has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *See, e.g.*, *Revson v.*

*Cinque & Cinque*, P.C., 221 F.3d 71, 78 (2d Cir. 2000) (quoting *Alyeska Pipeline Serv. Co. v.*

*Wilderness Soc'y*, 421 U.S. 240, 258-59 (1975)).  This power is one that "extends to a full range of

litigation abuses." *Chambers v. NASCO, Inc*., 501 U.S. 32, 46 (1991).  "Where exercise of inherent

power is necessary to remedy abuse of the judicial process, it matters not whether there might be

another source of authority that could address the same issue." *Cat3, LLC v. Black Lineage, Inc*., 164

F. Supp. 3d 488, 498 (S.D.N.Y. 2016).  Indeed, as the Supreme Court has recognized, "the inherent

power of a court can be invoked even if procedural rules exist which sanction the same conduct."

*Chambers*, 501 U.S. at 49.  At the same time, it is "plainly the case" that a court may resort to its

inherent powers "where the conduct at issue is not covered by one of the other sanctioning

provisions."  *Id.* at 50.

## ARGUMENT

### I.     Defendant Shewark's Discovery Misconduct Warrants Rule 37 Sanctions

Defendant Shewark must be sanctioned under Rule 37 for his various discovery

misconduct, including (1) his failure to produce the text message he sent Mr. Pizarro, which was

relevant and responsive to Plaintiff's discovery requests, in violation of Rule 37(c); (2) his failure to

comply with the Court's order directing him to swear truthfully to the contents of his text message

communications with Mr. Pizarro, in violation of Rule 37(b); and (3) his deletion of the message and

failure to take adequate steps to prevent further data destruction, in violation of Rule 37(e).

### A.     Defendant Shewark Failed to Disclose Relevant Evidence

A party moving for sanctions under Rule 37(c) for failure to produce discovery must

demonstrate:

> (1) that the party having control over the evidence had an obligation to timely
> produce it; (2) that the party that failed to timely produce the evidence had "a
> culpable state of mind"; and (3) that the missing evidence is "relevant" to the party's
> claim or defense such that a reasonable trier of fact could find it would support that
> claim or defense.

*Markey*, 2015 U.S. Dist. LEXIS 112915, at *47 (citations omitted).  All elements warranting

sanctions are satisfied here.

Defendant Shewark cannot dispute that the first element is met.  To satisfy this

element, the movant "must show that the respondent breached its obligations, either as set forth in

Rule 26 . . . or as provided in court orders regulating discovery."  *Id.* at *47 (citation omitted).  Here,

Defendant Shewark had an affirmative duty under Rule 26(b) to produce all requested, nonprivileged

materials relevant to Plaintiff's claims and proportional to the needs of this case.  *See* Fed. R. Civ. P.

26(b)(1).  Additionally, he was – and remains – obligated under Rule 26(e) to "supplement or correct [his] disclosure or response" to a Rule 34 request for production "in a timely manner if [he] learn[ed] that in some material respect the disclosure or response is incomplete or incorrect."  Fed. R. Civ. P. 26(e)(1)(A).  Plaintiff's discovery requests explicitly demanded production of any written communications that Defendant Shewark exchanged with any other person "concerning" Ms. Dave or this action; this encompasses text messages about Plaintiff's retained expert and his participation in this lawsuit.  (*See* Ex. 3 (Pl. Suppl. Interrogs. and Doc. Reqs.) at 5; *see also* Ex. 4 (Pl. Orig. Interrogs.) at 5, Ex. 5 (Pl. Orig. Doc. Reqs.) at 4.)  Defendant Shewark's text message to Mr. Pizarro, stating "10-4[.]  Douglas switched teams . . . some guys anything for $&$$," falls within the scope of these requests.

The second element – Defendant Shewark's culpable state of mind – is also satisfied, given that Defendant Shewark clearly knew the content of the message, its relation to this lawsuit, and its responsiveness to Plaintiff's discovery requests, and yet purposely withheld the message in bad faith.  *See Markey*, 2015 U.S. Dist. LEXIS 112915, at *47 ("The 'culpable state of mind' element is satisfied by a showing that 'a party has breached a discovery obligation . . . through bad faith or gross negligence [or] ordinary negligence.'" (citation omitted)).  Defendant Shewark sent the message.  According to Defendant Shewark, he and Mr. Pizarro "barely corresponded with each other," except when Mr. Pizarro reached out to him about Police Benevolent Association ("PBA") cards and stickers, and their communications were "limited" and "brief in duration."  (DE 75 at 3.) Mr. Pizarro similarly testified at his deposition that he "rarely spoke with [Defendant Shewark] about anything other than [the PBA cards and stickers] in the later part of [their] relationship" – "with the exception of this issue that [Defendant Shewark] reached out to [Mr. Pizarro] regarding [Mr. Douglas]."  (Ex. 15 (Pizarro Dep. Tr.) at 44:24-45:6.)  Considering that the August 10th message was one of few – if not the *only* – text messages that Defendant Shewark ever sent Mr. Pizarro, and all of their other communications were about PBA cards and stickers, Defendant Shewark's misrepresentation appears intentional.  The fact that he deleted the text message and then vigorously

opposed discovery about it – especially the forensic examination of his phone – bolsters this conclusion.

Even assuming, *arguendo*, that Defendant Shewark's failures to properly search for and produce the message were not in bad faith, such discovery delinquencies are, at minimum, negligent, which is a sufficient level of culpability.  *See R.F.M.A.S., Inc. v. So*, 271 F.R.D. 13, 23 (S.D.N.Y. 2010) (citation omitted), *opinion adopted*, 271 F.R.D. 55 (S.D.N.Y. 2010) ("In the Second Circuit, negligence is sufficient to establish culpability." (citation omitted)); *see also Design Strategy, Inc. v. Davis*, 469 F.3d 284, 296 (2d Cir. 2006) (holding that imposition of sanctions pursuant to Rule 37(c)(1) does not require showing of bad faith).  "In the discovery context, negligence is a failure to conform to the standard of what a party must do to meet its obligation to participate meaningfully and fairly in the discovery phase of a judicial proceeding." *Markey*, 2015 U.S. Dist. LEXIS 112915, at *48 (citation omitted).  "A party is negligent even if the failure 'results from a pure heart and an empty head.'" *Id.* (citation omitted).  Here, Defendant Shewark resisted every opportunity to meaningfully participate and cooperate with the Witness Tampering Discovery. Beyond failing to produce the message, he proceeded to delete the message, refused to safeguard the phone and its underlying data, opposed any forensic analysis of his phone, insisted it was "implausible that [he] would discuss anything relating to Douglas on August 10th," (DE 75 at 3), and accused Plaintiff of harassing and subjecting him to vexatious litigation, (*id*. at 5).

As such, Defendant Shewark acted with the requisite culpable state of mind.  *See, e.g.*, *Valentini v. Citigroup, Inc*., No. 11 Civ. 1355 (JMF), 2013 U.S. Dist. LEXIS 116473, *7-8 (S.D.N.Y. Aug. 16, 2013) (finding culpability where parties were "at least negligent in failing to properly search for and produce responsive documents in a timely and thorough manner"); *Lodge v. United Homes, LLC*, 787 F. Supp. 2d 247, 261 (E.D.N.Y. 2011) (concluding that defendants were "at best, grossly negligent" in their failure to produce relevant documents, where defendants were parties to underlying transaction reflected in documents and their claim that they were unaware of existence of documents was therefore "wholly unconvincing").

Finally, as to the relevance factor, "the standard of proof depends on the level of culpability." *Markey*, 2015 U.S. Dist. LEXIS 112915, at *48 (citation omitted). "[A] finding that a party breached its discovery obligations in bad faith is sufficient to establish the relevance of untimely produced or destroyed evidence as a matter of law; a finding that a party breached its obligations through gross negligence is 'frequently' sufficient." *Id.* at *48-49 (alteration in original) (citation omitted). Where the breach was negligent, however, "the evidence must be such that 'a reasonable trier of fact could find that it would support that claim or defense.'" *Id.* at *49 (citation omitted). Because Defendant Shewark flouted his discovery obligations in bad faith or at least through gross negligence, the relevance of the message is established as a matter of law. Insofar as the Court finds his breach to be merely negligent, Plaintiff still satisfies her burden. The only logical interpretation of Defendant Shewark's message stating, "10-4[.] Douglas switched teams . . . some guys anything for $&$$," is that Defendant Shewark viewed Mr. Douglas as betraying his "team" (*i.e.*, police officers) by testifying in this case. The brevity of the message strongly indicates that Defendant Shewark was following up on a previous discussion with Mr. Pizarro – their phone conversation the day before – during which he had expressed similar views, trying to convince Mr. Pizarro to discourage Mr. Douglas from testifying. This interpretation of the message is consistent with Mr. Pizarro's own understanding that Defendant Shewark was trying to use him to tamper with Mr. Douglas as a witness. (*See* Ex. 15 (Pizarro Dep. Tr.) at 84:14-22.) Finally, Defendant Shewark's various measures to thwart Plaintiff's efforts to obtain the message demonstrates his own recognition of the message's relevance.

## B. Defendant Shewark Violated the Court's Order

A party may be sanctioned under Rule 37(b)(2) for failure to comply with an order to provide or permit discovery, "notwithstanding a lack of wil[l]fulness or bad faith, although such factors 'are relevant . . . to the sanction to be imposed for the failure.'" *Auscape Int'l v. Nat'l Geographic Soc'y*, No. 02 Civ. 6441 (LAK), 2003 U.S. Dist. LEXIS 561, at *4 (S.D.N.Y. Jan. 17, 2003) (citation omitted). "Rule 37(b)(2) sanctions are applicable where . . . an affidavit prepared in

response to a court order does not comply with the order." *Quinby v. WestLB AG*, No. 04 Civ. 7406 (WHP) (HBP), 2005 U.S. Dist. LEXIS 35583, at *13 (S.D.N.Y. Dec. 15, 2005) (citation omitted).

Defendant Shewark violated the Court's order directing him to provide a sworn statement attesting to the substance of the messages he exchanged with Mr. Pizarro.  At the hearing on Plaintiff's motion to compel, defense counsel insisted that "[t]he text messages that are the subject of th[at] motion do not concern Douglas."  (Ex. 11 (Hrg Tr.) at 3:18-19.)  Relying on Defendant Shewark and his attorney's representations, the Court denied Plaintiff's motion but ordered Defendant Shewark to "provide a sworn affidavit regarding the content of the missing text messages."  (Minute Entry dated July 9, 2020.)  It is beyond dispute that implicit in the order was that the sworn statement be *truthful*.  Because Defendant Shewark knowingly provided a statement falsely representing that neither message pertained to Mr. Douglas, when, in fact, his message to Mr. Pizarro did, Defendant Shewark failed to obey the Court's order, and sanctions are proper.  *See, e.g.*, *Nike, Inc. v. Top Brand Co.*, 216 F.R.D. 259, 269 (S.D.N.Y. 2003) (imposing Rule 37(b)(2) sanctions because party "knowingly and brazenly" violated court order by failing to provide information ordered to be disclosed in affidavit).

### C.   Defendant Shewark Spoliated Relevant Evidence

Sanctions under Rule 37(e) are appropriate against a party who spoliates relevant electronically stored information ("ESI").  *See* Fed. R. Civ. P. 37(e).  Spoliation is "the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation."  *Greene*, 2019 U.S. Dist. LEXIS 6670, at *8 (quoting *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999)).  Here, Defendant Shewark spoliated ESI by deleting the message at issue and potentially irrevocably destroying the message's underlying metadata.

Such ESI "should have been preserved in the anticipation or conduct of litigation," as required under Rule 37(e).  *See* Fed. R. Civ. P. 37(e).  "[A] party seeking sanctions under [Rule 37(e)] must demonstrate that there was an obligation to preserve the evidence, which can be met by

demonstrating that the party 'was on notice that litigation was likely and that the information would be relevant.'"  *Greene*, 2019 U.S. Dist. LEXIS 6670, at *11 (citation omitted).  "Th[e] obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation – most commonly when suit has already been filed, . . . but also on occasion in other circumstances, as for example when a party should have known that the evidence may be relevant to future litigation."  *Id.* at *12 (quoting *Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir. 1998)).  Plaintiff commenced this action in July 2015, served her initial discovery requests on Defendant Shewark in July 2017, and served her supplemental requests on him in March 2019.  Because Defendant Shewark sent the message in August 2018, he clearly deleted it *after* this suit had already been filed and Plaintiff had served her initial requests – when he was already on notice of this litigation and the relevance of the message to the litigation.  Defendant Shewark, as a party in this action and the sender of the message, was in control of the message and had a duty to preserve it at the time he destroyed it.

Defendant Shewark destroyed ESI by "fail[ing] to take reasonable steps to preserve it."  *See* Fed. R. Civ. P. 37(e).  "Once a party reasonably anticipates litigation, it must suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of relevant documents."  *Cruz v. G-Star Inc*., No. 17-CV-7685 (PGG) (OTW), 2019 U.S. Dist. LEXIS 102686, at *33 (S.D.N.Y. June 19, 2019) (citation omitted).  Here, Defendant Shewark deleted the message from his phone despite its clear relevance and responsiveness to Plaintiff's discovery demands.  He ignored Plaintiff's explicit requests to preserve all mobile devices and data involved in communications with Mr. Pizarro, (Ex. 8 (Emails dated Oct. 2019 to Apr. 2020) at 3-4), and instead continued to use his phone, even though such use could result in further data destruction.  As such, Defendant Shewark not only refused to take any step to preserve the ESI, his actions demonstrate that he *took affirmative steps to destroy* such ESI.  *See e.g.*, *Resnik v. Coulson*, No. 17-CV-676 (PKC) (SMG), 2019 U.S. Dist. LEXIS 92159, at *34-35 (E.D.N.Y. Jan. 4, 2019) (finding "overwhelming" evidence that defendant deliberately destroyed evidence, where defendant manually installed and executed software to delete ESI).

Although Plaintiff was able to obtain the content of the message through a forensic analysis of Mr. Pizarro's phone, she does not have access to the message's underlying metadata from Defendant Shewark's phone, and such metadata may not "be restored or replaced through additional discovery."  *See* Fed. R. Civ. P. 37(e).  Plaintiff does not have critical metadata indicating, *inter alia*, the date on which Defendant Shewark deleted the message from his phone.  If the date is the same as, for example, when Plaintiff propounded her supplemental discovery requests, or expressly demanded Defendant Shewark to save the message, or filed her motion to compel, such information would be further probative of the witness tampering allegations.  There is no guarantee that such missing information can be restored or replaced, however, given Defendant Shewark's refusal to mitigate the destruction of data following his deletion of the message.  *See Cruz*, 2019 U.S. Dist. LEXIS 102686, at *36-38 (concluding ESI could not be restored or replaced, where partial ESI that was produced did not include all content that would have been found had ESI been properly and timely preserved).

## II.     Defendant Shewark's False Declaration Merits Rule 11 Sanctions

Sanctions against Defendant Shewark are also warranted under Rule 11(b) because he presented a declaration with false representations for an "improper purpose," in violation of subsection (b)(1), and the denials of factual contentions in his declaration are not "warranted on the evidence," in violation of subsection (b)(4).  *See* Fed. R. Civ. P. 11(b)[2]; *see also TVT Records, Inc. v. Island Def Jam Music Grp.*, No. 02 Civ. 6644 (VM) (DF), 2006 U.S. Dist. LEXIS 62230, at *11 (S.D.N.Y. May 15, 2006) ("Rule 11 applies to affidavits and declarations submitted in the course of

---

2.    Subsection (b)(3) of Rule 11 provides that by presenting a paper to a court, a party certifies that "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery."  Fed. R. Civ. P. 11(b)(3).  The 1993 Advisory Committee Notes explain the different language for contentions under subsection (b)(3) and denials under subsection (b)(4), noting that a party may reasonably deny an allegation if, "after an appropriate investigation, a party has no information concerning the matter," or if a party "has a reasonable basis for doubting the credibility of the only evidence relevant to the matter" but does not have evidence to affirmatively refute the allegation.  *See* Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment.  Thus, subsection (b)(4) requires denials to be "warranted on the evidence" rather than requiring "evidentiary support" as under subsection (b)(3).  *Compare* Fed. R. Civ. P. 11(b)(4), *with* Fed. R. Civ. P. 11(b)(3).  Here, because Defendant Shewark deleted the message from his phone and purportedly no longer had access to its contents, the statements in his declaration appear better characterized as denials rather than contentions.  To the extent the Court finds otherwise, however, Plaintiff's position is that Defendant Shewark also, or alternatively, violated Rule 11(b)(3).

litigation[.]" (citing *Pfizer, Inc. v. Y2K Shipping & Trading, Inc*., No. 00 CV 5304 (SJ), 2004 U.S.

Dist. LEXIS 10426, at *37-39 (E.D.N.Y. Mar. 26, 2004)).)

### A.    Plaintiff Satisfied Rule 11's Procedural Requirements

As a preliminary matter, Plaintiff satisfied the technical requirements of Rule 11.

First, Plaintiff is making her instant motion separately from any other.  *See* Fed. R. Civ. P. 11(c)(2).

Second, Plaintiff complied with the "safe harbor" provision of the Rule, which requires parties to

serve the motion at least 21 days before filing or presenting it to the court in order to give the non-

moving party an opportunity to appropriately correct his challenged misconduct.  *See id.*  On

September 4, 2020 – over a month ago – Plaintiff served Defendant Shewark with a draft notice of

the motion and a letter detailing the sources of authority for the sanctions to be sought, the specific

misconduct warranting sanctions, and the relief Plaintiff intended to seek from the Court.  (*See* Ex.

14 (Rule 11 Safe Harbor Ltr.)); *see also Star Mark*, 682 F.3d at 176 (holding that letter and notice of

motion are sufficient under Rule 11, which "does not require the service of a memorandum of law or

affidavits").  Defendant Shewark did not respond within the requisite period, consenting to the

corrective measures demanded by Plaintiff.  Accordingly, Plaintiff is permitted under Rule 11 to

bring this motion.

### B.    Defendant Shewark's False Declaration Was Objectively Unreasonable

Defendant Shewark's submission of a declaration that he knew to be false was

objectively unreasonable.  He presented the declaration for the improper purpose of impeding

Plaintiff's efforts to conduct discovery into allegations that he engaged in witness tampering.  *See*

Fed. R. Civ. P. 11(b)(1).  The denials of factual contentions in his declaration plainly were not

warranted based on the evidence.  *See* Fed. R. Civ. P. 11(b)(4).  Given that Defendant Shewark was

the one who sent the message and had limited correspondence with Mr. Pizarro and therefore could

not have simply forgotten the *one message* that did not pertain to PBA cards and stickers, there can

be no question he knew what the message was about.  Moreover, despite litigating this issue for

many months and knowing what was at stake when he submitted the declaration pursuant to the

Court's order, Defendant Shewark in no way qualified his statements by indicating that they were "based on belief or a lack of information." *See id.* His statements were unequivocal.

Submitting false declarations of this sort "degrades the legal profession and disserves justice," *Milani v. IBM Corp.*, No. 02 Civ. 3346 (MBM), 2004 U.S. Dist. LEXIS 28674, at *5 (S.D.N.Y. Dec. 30, 2004) (quoting *MacDraw, Inc. v. CIT Grp. Equip. Fin., Inc.*, 73 F.3d 1253, 1262 (2d Cir. 1996)), and necessitates sanctions. *See SEC v. Smith*, 710 F.3d 87, 90, 97-98 (2d Cir. 2013) (affirming Rule 11 sanctions against defendant for, *inter alia*, filing affidavit falsely stating that she did not have any interest in trust at issue); *Milani*, 2004 U.S. Dist. LEXIS 28674, at *4-5 (imposing Rule 11 sanctions for submission of affidavit "contradict[ing] objective facts"); *Margo v. Weiss*, No. 96 Civ. 3842 (MBM), 1998 U.S. Dist. LEXIS 17258, at *8 (S.D.N.Y. Oct. 28, 1998), *aff'd*, 213 F.3d 55 (2d Cir. 2000) (imposing Rule 11 sanctions because filing of false affidavits was objectively unreasonable). Without the force of such sanctions, there is little assurance that Defendant Shewark will not continue to lie.

## III.   Sanctions Under the Court's Inherent Powers Are Appropriate for Defendant Shewark's Discovery Misconduct and False Representations

An award of sanctions under the court's inherent power requires evidence that the challenged action (1) "was without a colorable basis" and (2) was made "in bad faith, *i.e.*, motivated by improper purposes such as harassment or delay." *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 336 (2d Cir. 1999) (citation omitted); *see also Oliveri v. Thompson*, 803 F.2d 1265, 1272 (2d Cir. 1986) ("'Bad faith' may be found, not only in the actions that led to the lawsuit, but also in the conduct of the litigation." (citation omitted)). Both conditions are met here.

### A.   Defendant Shewark's Actions Were Unjustified

Defendant Shewark's discovery misconduct and false representations to the Court and Plaintiff were unquestionably without a colorable basis. "Conduct is entirely without color when it lacks any legal or factual basis; it is colorable when it has some legal and factual support, considered in light of the reasonable beliefs of the [party] whose conduct is at issue." *Wolters*

16

*Kluwer Fin. Servs. v. Scivantage*, 564 F.3d 110, 114 (2d Cir. 2009) (citation omitted).  As evidenced by the results of the forensic analysis of Mr. Pizarro's phone and recovery of the message, Defendant Shewark's withholding of the message, failure to preserve the message and its underlying data, and misrepresentations about its content lacked any factual basis.  All such conduct by Defendant Shewark was premised on his assertion that the message did not pertain in any way to Mr. Douglas – an assertion that Plaintiff long doubted and has now confirmed to be entirely false.

**B.**   **Defendant Shewark's Actions Were in Bad Faith and for Improper Purposes**

Defendant Shewark's perjury and other misconduct were actions taken in bad faith and for improper purposes, including to hamper Plaintiff's ability to conduct discovery into the witness tampering allegations.  "Bad faith can be inferred when the actions taken are 'so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose.'"  *Schlaifer*, 194 F.3d at 338 (citation omitted).  As discussed above, any suggestion that Defendant Shewark forgot the content of the message strains credulity.  He had to have known what the message was about, as well as its relevance to this action, and yet deliberately spoliated the evidence and lied to the Court.  Such actions qualify as bad faith conduct.  *See, e.g.*, *Abbott Labs. v. Adelphia Supply USA*, No. 15 CV 5826 (CBA) (LB), 2019 U.S. Dist. LEXIS 75364, at *56 (E.D.N.Y. May 2, 2019), *report and recommendation adopted*, 2020 U.S. Dist. LEXIS 50928 (E.D.N.Y. Mar. 24, 2020) (finding bad faith could be inferred from defendants' "deliberate and strategic non-compliance with discovery, their selective withholding of responsive documents, and their perjury"); *Cat3*, 164 F. Supp. at 501 ("Spoliation designed to deprive an adversary of the use of evidence in litigation qualifies as bad faith conduct.").  If Defendant Shewark were now unsure of the content, he could have qualified the attestations in his declaration.  He chose not to.  All in all, "the record carries a circumstantial stench that only heroic credibility findings in [Defendant Shewark's] favor would dissipate."  *Smith*, 710 F.3d at 98.

Notably, Defendant Shewark offered to provide a sworn statement regarding the content of the message only *after* he had forensically imaged his phone for a second time and again

obtained "negative results," gaining him the confidence that his message was permanently lost.  It was only by a stroke of luck that Plaintiff was able to obtain the content.  Had Mr. Pizarro not volunteered his phone for a forensic analysis, Defendant Shewark would have gotten away with his discovery violations and perjury.  His misconduct is particularly egregious considering that he is an active law enforcement officer who swore under oath to support and defend the law and faithfully discharge his duties.  Here, as in *Abbott*, "[b]ut for being caught in a web of irrefutable evidence, [Defendant Shewark] would have profited from [such] misconduct.  2019 U.S. Dist. LEXIS 75364, at *55.

**IV.     Plaintiff Is Entitled to Various Forms of Relief**

Plaintiff respectfully requests various forms of relief to compensate her for the costs and fees incurred and prejudice suffered as a result of Defendant Shewark's sanctionable conduct, to punish Defendant Shewark for such misconduct, and to deter future violations by him. ***First***, Plaintiff seeks additional discovery, including an independent forensic analysis of Defendant Shewark's phone and any imaging already made of it to determine: (1) whether the message he sent Mr. Pizarro is indeed no longer recoverable from his device; (2) when the message was deleted from his phone; and (3) when he deleted messages exchanged with other individuals, in order to see whether Defendant Shewark routinely and indiscriminately deletes his messages, as defense counsel suggested to Plaintiff, or selectively deleted the messages exchanged with Mr. Pizarro.  Plaintiff also requests a deposition of Defendant Shewark following such an analysis of his phone. ***Second***, to the extent that the metadata of the message he sent Mr. Pizarro (including metadata indicating when the message was deleted) cannot be recovered from Defendant Shewark's phone, Plaintiff requests an adverse inference instruction at trial that such metadata was favorable to Plaintiff. ***Third***, Plaintiff requests compensatory and punitive monetary sanctions to cover attorneys' fees and the costs of forensically examining both Mr. Pizarro's and Defendant Shewark's phones, bringing the motion to compel a forensic analysis of Defendant Shewark's phone, pursuing the deleted message from sources other than Defendant Shewark, and bringing the instant motion for sanctions. ***Finally***,

Plaintiff requests any further relief as the Court deems just and proper.  All such relief is permitted under Rule 37, Rule 11, and the Court's inherent power.

### A.   Additional Discovery and Monetary Sanctions Are Appropriate Under Rule 37(b) and (c)

"A district court has wide discretion to impose sanctions, including severe sanctions, under [Rule] 37 . . . ." *Design Strategy,* 469 F.3d at 294 (citations omitted).  Where a party fails to obey a discovery order, Rule 37(b) provides that the court "*must* order the disobedient party . . . to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust."  Fed. R. Civ. P. 37(b)(2) (emphasis added).  For failure to disclose or supplement under Rule 37(c), the court may "order payment of the reasonable expenses, including attorney's fees, caused by the failure" and "impose other appropriate sanctions."  Fed. R. Civ. P. 37(c)(1).  In determining the appropriate sanction to impose under Rule 37, courts generally consider "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance; and (4) whether the non-compliant party had been warned of the consequences of . . . noncompliance."  *World Wide Polymers, Inc. v. Shinkong Synthetic Fibers Corp.*, 694 F.3d 155, 159 (2d Cir. 2012) (citation omitted).  Here, all such factors weigh heavily in favor of granting Plaintiff additional discovery and an award of attorneys' fees and costs.

First, as to Defendant Shewark's willfulness or reasons for noncompliance, Defendant Shewark has yet to provide *any* explanation for withholding the relevant message and underlying metadata and for violating the Court's order by providing a false declaration.

With respect to the second factor, imposing sanctions lesser than additional discovery would be futile.  Defendant Shewark alleges that his phone was already forensically imaged twice, both times "with negative results," (DE 75 at 1 n.1), but he has not disclosed the details of either imaging, including who performed it, when, and how.  Plaintiff therefore has no assurance as to whether either imaging was conducted properly or whether the message and underlying data can, in

fact, still be recovered from his phone.  A forensic analysis of his device, conducted pursuant to a protocol to which Plaintiff agrees, is thus necessary.  Plaintiff also requires an opportunity to depose Defendant Shewark based on the newly discovered information demonstrating that this declaration is perjurious.  *See Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, No. 05 Civ. 9016 (SAS), 2010 U.S. Dist. LEXIS 4546, at *108-09 (S.D.N.Y. Jan. 15, 2010) (awarding, *inter alia*, additional discovery for parties' submission of false and misleading declarations). Defendant Shewark does not appear to dispute the propriety of granting Plaintiff such additional discovery.  Indeed, at the parties' meet-and-confer following the forensic analysis of Mr. Pizarro's phone, he offered, but only as a partial corrective measure, to have his own phone analyzed and to be subjected to a deposition.

As to attorneys' fees and costs, "[w]hen parties . . . make false statements to their adversaries and to the court that generate costs," as Defendant Shewark did here, "there is every reason for them to pay those costs."  *Margo*, 1998 U.S. Dist. LEXIS 17258, at *8.  "Monetary sanctions are [also] appropriate 'to punish the offending party for its actions [and] to deter the litigant's conduct, sending the message that egregious conduct will not be tolerated.'"  *Pension*, 2010 U.S. Dist. LEXIS 4546, at *30 (second alteration in original) (citation omitted).  "An award of attorney's fees is . . . 'the mildest of the sanctions authorized by Rule 37.'"  *Kosher Sports, Inc. v. Queens Ballpark Co.*, LLC, No. 10-CV-2618 (JBW), 2011 U.S. Dist. LEXIS 86651, at *44-45 (E.D.N.Y. Aug. 5, 2011) (citation omitted).  Considering Defendant Shewark's flagrant disregard of his discovery obligations, monetary sanctions are proper.  *See, e.g.*, *Lodge*, 787 F. Supp. at 263-64 (awarding costs and fees incurred in pursuing discovery and filing and responding to related motions, where defendants repeatedly made misrepresentations and belatedly produced relevant documents).

Turning to the third factor – the duration of the period of Defendant Shewark's noncompliance – Defendant Shewark sent the message *over two years ago* in August 2018, and there is no indication he *ever* intended to produce the message and its underlying data had he not been caught.  Courts have imposed sanctions for discovery delinquencies for far shorter periods and under

far less egregious circumstances.  *See, e.g.*, *Valentini*, 2013 U.S. Dist. LEXIS 116473, at \*12-13 (imposing sanctions where party had been deficient for six months, fact discovery was still open, and there was no evidence that other party had been significantly prejudiced by delay).

Finally, Defendant Shewark was sufficiently on notice of the consequences of noncompliance.  He knew the significance of the message and its contents, considering that the parties have spent most of this year litigating the issue of his deletion of the message, and that whether the message pertained to Mr. Douglas was the only question to be addressed in his declaration.  He also knew the consequences of making false statements in his declaration, given that in it, he "declare[d] under penalty of perjury . . . that the foregoing is true and correct."  (Ex. 12 (Shewark Decl.).)  Moreover, Plaintiff indicated in her reply in support of her motion to compel that she would have a basis to move for sanctions if the message (including its metadata) was no longer recoverable due to Defendant Shewark's spoliation of such evidence.  (DE 76 at 2.)  Although the Court may not have issued any explicit warning to Defendant Shewark, the Second Circuit "has never considered warnings an absolute condition precedent."  *Daval Steel Prods., Div. of Francosteel Corp. v. M/V Fakredine*, 951 F.2d 1357, 1366 (2d Cir. 1991); *see also id.* ("Parties . . . have no absolute entitlement to be 'warned' that they disobey court orders at their peril.").

**B.  An Adverse Inference Instruction Regarding Any Spoliated Metadata Is Warranted Under Rule 37(e)**

Rule 37(e) provides for two specific categories of sanctions for spoliation of ESI. Pursuant to Rule 37(e)(2), upon a finding that a party "acted with the intent to deprive another party of the information's use in the litigation," a court may "instruct the jury that it may or must presume the information was unfavorable to the party."  Fed. R. Civ. P. 37(e)(2)(B).  Absent a showing of an "intent to deprive," under Rule 37(e)(1), a court may only "order measures no greater than necessary" to cure the prejudice suffered by the other party from loss of the information.  Fed. R. Civ. P. 37(e)(1).

21

Defendant Shewark acted with the intent required under Rule 37(e)(2), warranting an adverse inference instruction that any spoliated metadata of the message was favorable to Plaintiff. He has yet to provide any adequate explanation as to why he deleted the message. He has never suggested that the message was unintentionally erased due to any auto-delete setting on his phone. Rather, on information and belief, Defendant Shewark deleted the message manually. *See Resnik*, 2019 U.S. Dist. LEXIS 92159, at *35-36 (finding defendant's use of data-wiping software was "plainly deliberate and unreasonable" and "amply demonstrates" he acted with intent to deprive plaintiff's use of ESI, where installation and execution of software had to have been performed by defendant and were not part of any automated system process). As discussed above, he also refused to take *any* step to preserve the message's underlying data and took *every* step to hinder Plaintiff's investigation of his deletion, lending further support to the conclusion that he acted with the intent to deprive Plaintiff of the ESI. *See, e.g.*, *Cruz*, 2019 U.S. Dist. LEXIS 102686, at *40-46 (finding sufficient circumstantial evidence to infer that defendants intended to deprive plaintiff of ESI, given defendants' failure to take any step to preserve ESI, failure to properly investigate or timely disclose deletion, and "suspect" timing of deletion); *Ottoson v. SMBC Leasing & Fin., Inc.,* 268 F. Supp. 3d 570, 582 (S.D.N.Y. 2017) (finding that failures to produce communications and to take reasonable steps to preserve such ESI satisfied requisite level of intent).

An adverse inference instruction here "will serve the 'prophylactic and punitive rationales' for such an instruction, 'deter[ring] such destruction, and [] properly plac[ing] the risk of an erroneous judgment on [Defendant Shewark for] wrongfully creat[ing] the risk." *Cruz*, 2019 U.S. Dist. LEXIS 102686, at *46-47 (first, second, and third alterations in original) (citation omitted). It will also "serve[] the remedial function of 'restoring [Plaintiff] to the same position [she] would have been in absent the wrongful destruction of evidence by [Defendant Shewark].'" *Id.* at *47 (third alteration in original) (citation omitted).

Insofar as the Court finds that Defendant Shewark did not spoliate any ESI with an "intent to deprive," a deposition of Defendant Shewark and an award of attorneys' fees and costs

22

would be appropriate sanctions "no greater than necessary" to cure the prejudice Plaintiff has

suffered.  By depriving Plaintiff of the message's metadata, Defendant Shewark has hampered her

ability to prove that he engaged in witness tampering.  *See Sekisui Am. Corp. v. Hart*, 945 F. Supp.

2d 494, 506 (S.D.N.Y. 2013) (finding printed versions of destroyed emails "of significantly less

evidentiary value given that their metadata is no longer available").  Additionally, Plaintiff has

incurred unnecessary costs and fees in seeking the message and its underlying data, including by

filing Rule 45 subpoenas on Defendant Shewark's telecommunications providers for his phone

records, deposing Mr. Pizarro about his correspondence with Defendant Shewark, having multiple

meet-and-confers with defense counsel in an effort to resolve the issue of the missing message

without burdening the Court, filing her motion to compel a forensic analysis of Defendant Shewark's

phone, engaging a firm to forensically examine Mr. Pizarro's phone, and filing the instant motion for

sanctions.

Allowing Plaintiff to depose Defendant Shewark and awarding her fees and costs

would, at minimum, allow her to question Defendant Shewark about the circumstances under which

he deleted the message, including the date on which he did so, "ameliorate[] the economic prejudice

imposed on [Plaintiff]," and "serve[] as a deterrent to future spoliation."  *Cat3*, 164 F. Supp. at 502;

*see also Pension*, 2010 U.S. Dist. LEXIS 4546, at *104-09 (awarding adverse inference instruction

and additional discovery).

**C.**     **The Relief Sought Are Also Warranted Under Rule 11 and the Court's Inherent Power**

Courts have broad discretion in tailoring appropriate sanctions under Rule 11 and

their inherent power.  *See Stair v. Calhoun*, No. 12-CV-6121 (SIL), 2016 U.S. Dist. LEXIS 126565,

at *41 (E.D.N.Y. Sept. 16, 2016); *Riley v. City of New York*, No. 10-CV-2513(MKB), 2015 U.S.

Dist. LEXIS 16025, at *34 (E.D.N.Y. Feb. 10, 2015).

Pursuant to this wide authority, courts have imposed under Rule 11 and their inherent

power similar sanctions sought by Plaintiff here for misconduct comparable to Defendant Shewark's.

23

Courts have awarded, for example, Rule 11 monetary sanctions against a party for filing false statements.  *See, e.g.*, *Margo*, 1998 U.S. Dist. LEXIS 17258, at *8 (awarding fees under Rule 11 for filing of false affidavit); *O'Neil v. Ret. Plan for Salaried Emps. of RKO Gen., Inc*., No. 88 Civ. 8498 (JSM), 1992 U.S. Dist. LEXIS 237, at *15 (S.D.N.Y. Jan. 7, 1992) (awarding costs under Rule 11 for filing of false affidavit).  In imposing monetary sanctions for spoliation of ESI, courts have recognized the availability of sanctions under their inherent power even if Rule 37(e) did not apply, since "[a] party's falsification of evidence and attempted destruction of authentic, competing information threatens the integrity of judicial proceedings even if the authentic evidence is not successfully deleted."  *Cat3*, 164 F. Supp. 3d at 498, 502 (citation omitted).  Courts have concluded that adverse inference instructions are also appropriate remedies for spoliation under either Rule 37(e) or the courts' inherent authority.  *See, e.g.*, *Hsueh v. N.Y. State Dep't of Fin. Servs*., No. 15 Civ. 3401 (PAC), 2017 U.S. Dist. LEXIS 49568, at *16 (S.D.N.Y. Mar. 31, 2017); *see also Cat3*, 164 F. Supp. 3d at 501 ("[I]mposition of an adverse inference are available sanctions under either Rule 37(e) or the court's inherent authority." (citations omitted)).

## V.   Defendant Shewark's Misconduct Should Be Referred to the U.S. Attorney's Office for Investigation

Finally, Plaintiff respectfully requests that the Court refer Defendant Shewark's misconduct to the U.S. Attorney's Office for the Eastern District of New York for investigation and, if appropriate, prosecution for perjury.  "No legal system can long remain viable if lying under oath is treated as no more than a social solecism."  *United States v. Cornielle*, 171 F.3d 748, 753 (2d Cir. 1999).  As the Supreme Court has recognized, "Perjured testimony is an obvious and flagrant affront to the basic concepts of judicial proceedings.  Effective restraints against this type of egregious offense are therefore imperative."  *United States v. Mandujano*, 425 U.S. 564, 576 (1976).  Accordingly, "Congress has made the giving of false answers a criminal act punishable by severe penalties[.]"  *Id.*  Under 18 U.S.C. § 1621, "[w]hoever . . . in any declaration . . . under penalty of perjury . . . willfully subscribes as true any material matter which he does not believe to be true . . . is

guilty of perjury and shall . . . be fined under this title or imprisoned not more than five years, or both."  18 U.S.C. § 1621.

The forensic analysis of Mr. Pizarro's phone provides incontestable evidence that Defendant Shewark committed perjury through his false declaration, which he presented under oath. Given such evidence of criminal conduct – particularly by an active, sworn law enforcement officer – a referral to the U.S. Attorney's Office is proper.  *See, e.g.*, *Dugan v. United States*, No. 11-cv-3973 (SLT), 2015 U.S. Dist. LEXIS 119041, at *3-7, *14 (E.D.N.Y. Sept. 3, 2015) (referring matter to U.S. Attorney's Office for possible prosecution for perjury, where party made false statements in declaration); *Ades v. 57th St. Laser Cosmetica, LLC*, No. 11 Civ. 8800 (KNF), 2013 U.S. Dist. LEXIS 79864, at *36-37 (S.D.N.Y. June 6, 2013) (referring defendant's misconduct, which included false testimony, to U.S. Attorney's Office for investigation and, if appropriate, prosecution for perjury); *A.V. by Versace, Inc. v. Gianni Versace S.p.A.*, 446 F. Supp. 2d 252, 277 (S.D.N.Y. 2006) (granting motion to refer matter to U.S. Attorney's Office, where there was "reason to believe" defendant had perjured himself).  Defendant Shewark will undoubtedly insist his misrepresentation was unintentional, a claim that lacks credibility but is in any event a question for prosecutors.

## CONCLUSION

For the foregoing reasons, the Court should grant Plaintiff's motion for sanctions against Defendant Shewark and award Plaintiff all relief sought, as well as any such further relief as the Court deems just and proper.

DAVID B. SHANIES LAW OFFICE

New York, New York
Dated: November 2, 2020

By:

David B. Shanies
Joel A. Wertheimer
Deborah I. Francois
411 Lafayette Street, Sixth Floor
New York, New York 10003

*Counsel for Plaintiff Rita Dave*

25